No. 28,879.

The Amsden Lumber Company, *Appellant*, v. H. C. Arnspiger et al., *Appellees*.

(281 Pac. 931.)

Opinion filed November 9, 1929.

Ed. T. Hackney, of Wellington, H. W. Hart, Glenn Porter and Enos E. Hook, all of Wichita, for the appellant.

W. T. McBride, John A. Potucek, Ivan D. Rogers, F. M. Rogers and Wendell Ready, all of Wellington, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was instituted by the Amsden Lumber Company, whose petition took the form of a petition to foreclose a

mechanic's lien on described lots. Other mechanics'-lien claimants and a mortgagee were parties defendant. The court found the interests of the various mechanics'-lien claimants to be different from the asserted interests, directed a sale of the lots, and provided for distribution of the proceeds. The lien claimants appeal.

The lumber company's petition alleged that it furnished building material for the erection of a dwelling house on the lots, under contract with the owner, H. C. Arnspiger, who was a party defendant. The prayer was for judgment against Arnspiger, for foreclosure of the mechanic's lien, and for a first lien.

The mortgagee mentioned as a defendant was the Sumner County Building and Loan Association. Its answer pleaded its mortgage, and pleaded facts showing the lumber company waived priority of lien in favor of the building and loan association. The mortgage was signed by Arnspiger. The prayer of the answer was for a personal judgment against Arnspiger, for foreclosure of the mortgage, and for a first lien.

Other mechanics'-lien claimants were Nichols & Son, the contractors who erected the building, and the Burks Plumbing Company, which installed the plumbing and the heating plant. They filed answers setting up liens based on contracts with Arnspiger, as owner, and praying for proper relief.

Arnspiger answered, and pleaded facts showing his relation to the project of building the house was such that he was not personally indebted to the mechanics'-lien claimants or to the mortgagee.

The evidence disclosed that the first work toward erection of the dwelling house was done on August 13, 1927. On August 16 the lumber company furnished the first material. The building and loan association mortgage was executed on September 3. The plumbing and heating material and labor were furnished later. Previous to August 13 the lots were owned by and were in possession of L. H. Sarchet. On that day Sarchet sold and conveyed the lots to Arnspiger, without previous obligation to do so, whether pursuant to verbal contract, written contract, bond for deed, or otherwise. The contracts under which the mechanics'-lien claimants furnished labor and material were all made previous to August 13, and were not made with Sarchet as owner, or in any other capacity, nor with his wife, agent or trustee, and were not made with Arnspiger as prospective owner, legal or equitable, or in any other capacity.

The court found that the building and loan association mortgage was a lien subject only to unpaid labor claims, and ordered a sale of the lots subject to the mortgage. If the lots sold for enough to pay the labor claims, the action of the building and loan association to foreclose its mortgage was to be dismissed. The cause was reserved for further judgment in case the lots did not sell for the required amount, and the judgment was afterward extended to include foreclosure of the mortgage. The court found that the mechanics'-lien claimants did not have mechanics' liens, because their contracts to furnish material and labor were not made with the owner of the lots; but the court directed division of proceeds of sale of the lots among the lien claimants according to an equitable scheme of priority.

The lumber company and other mechanics'-lien claimants contend no issue respecting existence of mechanics' liens was raised by the pleadings; that the only issue in the case was that of priority; that as between the lumber company and the building and loan association the issue of priority was limited to waiver by the lumber company; and that the principal question in this court is whether the district court was authorized to determine the action on an issue of its own creation and not presented by pleading or proof.

When pleadings are formally sufficient to raise an issue, and the issue is in fact fully tried, the court may determine the action according to the pleading and proof, and grant proper relief. In this instance, the judgment is supported by pleading and by proof that the claimants were not entitled to mechanics' liens at all.

The principal features of the story of the case appear in the court's findings of fact which, together with the conclusion of law complained of, follow:

"The court finds that, in the spring of 1927, one Sol Dan promoted, in connection with the Wellington *Daily News,* an advertising plan by which a house to be called the House Beautiful was to be built, and various artisans and merchants were to coöperate in the building of the house, take advertising contracts with the newspaper, and gain further advantages by way of connection with what was intended to be a model dwelling. Numerous contracts for advertising and some contracts for furnishing material and performing the labor in the matter of the construction of the house, were made.

"The general plan as originally contemplated was that the labor on the construction of the house was to be paid as the work progressed, and the materials used, to be billed at cost and handling charge, were to be paid when the property was sold, and any loss or gain was to be apportioned among those contributing materials to the construction.

"This plan was departed from in material particulars before the construction of the building was actually commenced.

"Lots 25 and 26 in block 7, in Woodlawn addition to the city of Wellington, Sumner county, Kansas, were selected as a site for the house.

"This description of real estate at all times and up to August 13, 1927, was the property and in possession of Doctor Sarchet, and neither the Wellington *Daily News,* nor Sol Dan, nor H. C. Arnspiger, nor Harry Woods (publisher of the Wellington *Daily News),* owned or had any interest whatever in the said described real estate.

"That the plaintiff, the Amsden Lumber Company, the defendant Nichols & Son, and defendant Burks Plumbing Company, entered into certain engagements for the furnishing of labor and materials for the construction of said house, that all such engagements and contracts were made before the 13th of August, 1927. That Doctor Sarchet nor any trustee, agent or wife for the said Doctor Sarchet, was a party to any of the contracts for the furnishing. of labor or supplying the materials for the said house.

"That the contract of the plaintiff, the Amsden Lumber Company, contemplated the payment of three-fourths of its bills for lumber monthly as the work progressed, and the whole amount thereof at the completion of the house; and that the Amsden Lumber Company was not to participate in any profit or loss on the said building; that this arrangement was entered into by the plaintiff with the said Sol Dan and defendant H. C. Arnspiger, representatives of the Wellington *Daily News* as advertising solicitors, and by arrangement with them the fact of these preferential payments to the Amsden Lumber Company was concealed from the defendant Burks, and to this arrangement to thus fail to disclose this contract to Burks and others the plaintiff was a party.

"The building of the structure was commenced on the 13th of August, 1927; up to that time there was no arrangement, understanding or agreement that the defendant H. C. Arnspiger should hold or have the title to the premises, and the owner thereof about that time having decided to retire from his previous arrangement to contribute the lots and wait for his pay until the building was sold, the defendant Arnspiger took an assignment of the Doctor Sarchet contract and advanced $750 to pay the consideration and took the deed to himself.

"At some undetermined time, but prior to the 13th of August, 1927, there was a meeting in the office of the plaintiff company, attended by representative of the plaintiff, by Nichols & Son, by Mr. Burks, Mr. Arnspiger, and possibly some others. At this meeting blue prints of the proposed house were submitted, examined, and approved by all the interested parties there present, and by common consent of those present defendant Arnspiger was appointed as trustee and representative to have general charge of the construction of the building.

"That at that time the contract of the plaintiff, and of defendant Nichols & Son, has been executed, and that a contract by Burks Plumbing Company for the plumbing of the building has been executed, and that some time, not shown by the evidence, the plumbing contract undertaken by the Burks Plumbing Company was amended to include the heating.

"The contracts on the part of the plaintiff and defendant Burks appear in the evidence as proposals to the Wellington *Daily News,* and it does not appear that in the first instance any person engaged personally or individually to pay the amounts to become due under the proposals thus made, it being understood by all parties concerned that the property itself would be realized upon and payment thus secured.

"There is evidence tending to show, and the court finds, that after the contracts were signed the defendant Arnspiger orally stated, notably at the meeting in the plaintiff's office, that the amounts to become due the interested parties were guaranteed, but it does not appear from the testimony by preponderance thereof that these were made or taken by the interested parties to be the individual contract of the defendant Arnspiger.

"The itemized statement filed by the plaintiff is made out to Arnspiger, trustee, no person is stated to be debtor on the itemized statement filed by the Burks Plumbing Company; the statement by defendant Nichols & Son, on their own account, and by Bennett, for which Nichols & Son are assignee, bear evidence tending to show that the account was carried against the Home Beautiful. The checks issued by defendant Arnspiger, used by all parties, plaintiff and defendant, are signed 'H. C. Arnspiger, Home Beautiful.'

"It is further found that all the labor and material, subject of the mechanics'-lien statements, were furnished in contemplation of and under contracts made before August 13, 1927.

"The defendant building and loan association, in open court, admitted that the loan association had notice of and agreed to the payment of labor bills on the building, and that labor accounts on the building presently unpaid should have priority over the claim of the building and loan association.

"The court finds as a matter of law that at the time the contracts for the furnishing of labor and material, under which the lien claimants claim their liens, Doctor Sarchet was the owner of the said premises, and no contract with Doctor Sarchet, nor with his wife, nor with any agent, nor with any trustee of the said owner, was made; that the said lien claimants have no lien on the said premises."

The material allegations of the lumber company's petition have been stated—contract with Arnspiger as owner pursuant to which material was furnished. The answer of the building and loan association denied all allegations of the petition except that the lumber company furnished material, and so put in issue not simply priority of lien, but existence of lien. Besides that, the answer of the building and loan association pleaded the contract under which the lumber company furnished material. This contract, like the contracts of other coöperators in the Home Beautiful project, took the form of offer to the Wellington *Daily News* and acceptance by the offeree, and read as follows:

*"Wellington Daily News, Wellington, Kan.:*                    JULY 5, 1927.

"GENTLEMEN—Kindly include our firm's name as one of the coöperators in the building of the Home Beautiful.

"We agree to furnish all of the lumber and building material for this home at cost plus a reasonable handling charge. This material to be paid for as follows, according to the arrangements made with the Sumner County Building and Loan Association:

"Three-fourths of the cost of this material to be paid us at the end of each month, and the remaining balance to be paid us when the house is completed.

"We further agree to insert in the Home Beautiful section, once each week, for twelve weeks, 18 inches of display advertising, total cost to be $90 payable monthly as used.      Very truly yours,

                              "AMSDEN LUMBER COMPANY,
                                        "Wellington, Kan.,
                              "By C. D. HENSLEY, *Mgr.*"

"Accepted: WELLINGTON DAILY NEWS. By S. DAN."

The answer of the building and loan association also pleaded its own contract containing the arrangement for furnishing money. That contract read as follows:

*"Wellington Daily News, Wellington, Kan.:*                    JULY 1, 1927.

"GENTLEMEN—Kindly include our firm's name as one of the coöperators in the building of the 'Home Beautiful' which is being sponsored by you.

"We agree to make the loan on this property, subject to our usual and regular conditions, the amount loaned to be not in excess of two-thirds of our appraisal value. It is understood that you will submit to us a set of the house plans and specifications, and after our appraisal and approval, we will make the loan with payments as follows:

"Each week end after construction begins, we will advance an amount sufficient to pay the labor done that week, and after each month during the construction period we will advance an amount equal to three-fourths of the lumber bill.

"The balance of the loan to be paid to you after completion of the house. It is understood and agreed that you will give to us a clear title and deed to this property, and that we are to have first lien on the entire property.

"We further agree to insert in the Wellington *Daily News,* once each week, for twelve weeks, while the home is being built, in the 'Home Beautiful' section, 9 inches of display in advertising, total cost to us for the twelve weeks, $45, payable monthly as used.           Very truly yours,

              "SUMNER COUNTY BUILDING AND LOAN ASSOCIATION,
                              "By IVAN D. ROGERS, *Secretary.*"

"Accepted: WELLINGTON DAILY NEWS. By S. DAN."

Arnspiger's answer denied all allegations of the petition and of the cross petitions of the various claimants, so far as they sought to charge him with personal liability. The answer outlined the

Home Beautiful advertising scheme, sketched Arnspiger's connection with the execution of the scheme, and told how he came to acquire title to the lots and to sign the mortgage.

The result of the foregoing is that the pleadings actually opened the bag, although no pleading contained the specific statement that the claimed mechanics' liens were nullities. The evidence in the case, which covered every detail of the Home Beautiful enterprise from inception to failure, spilled all the beans. No matter how the lien claimants labeled the picture, the court could see what it was. There was no lawful basis for mechanics' liens, and the judgment is none the less sound because the litigants expended effort to solve the controversy on less fundamental ground.

In a supplemental proceeding personal judgment was rendered against Arnspiger in favor of the building and loan association. The building and loan association was a coöperator. It did not contract for personal security in addition to its mortgage security, and Arnspiger was a mere figurehead in the creation of the mortgage security.

The personal judgment of the building and loan association against Arnspiger is set aside, and judgment in his favor is directed. In other respects, the judgment of the district court is affirmed.